**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

**DEWAIN BOOGIE TROTTER, DEMARCUS LACEY, BRYCE BLEVINS, BAILEY FISHER, JOHANNA STROM, PEYTON ILDERTON, MEREDITH MAIER, BLESSING KING, PAIGE SIMPSON, RYAN HOLMES, HANNAH WYLER, KSENIA MAMONTOVA, ALLIE MARTIN, and LEILA BOUSEDDRA,**

Plaintiffs,

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,**

Defendant.

Case No.: 3:26-cv-00523

**TRO AND PRELIMINARY INJUNCTION REQUESTED VERIFIED ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, WITH REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS**

Plaintiffs Dewain Boogie Trotter, Demarcus Lacey, Bryce Blevins, Bailey Fisher, Johanna Strom, Peyton Ilderton, Meredith Maier, Blessing King, Paige Simpson, Ryan Holmes, Hannah Wyler, Ksenia Mamontova, Allie Martin, and Leila Bouseddra (collectively, "Plaintiffs"), by and through undersigned counsel, bring this action to challenge the National Collegiate Athletic Association's (the "NCAA") application of its Seasons of Competition Rule under NCAA Bylaw 12.6 to Plaintiffs, in light of the NCAA's rule change permitting all athletes graduating from high school after 2022 to compete in five seasons of competition without needing to redshirt. The NCAA's exclusion of Plaintiffs from that rule change unfairly limits the number of seasons they may play during their five-year eligibility window and unjustifiably restrains their ability to earn compensation through the use of their name, image, and likeness ("NIL") in connection with their status as Division I athletes.

NCAA athletes have a reasonable expectation that they will be treated fairly by the NCAA, and that NCAA rules will be applied consistently regardless of the year in which an athlete graduated from high school or the semester in which the athlete first enrolled in college. For the last four years, Plaintiffs have competed against older, more experienced athletes who were permitted five or six seasons of competition under a COVID-era waiver granted to athletes graduating from high school and enrolling in college between 2017 and 2020. The NCAA has now codified five years of competition as a permanent rule going forward, but has excluded the current class of college seniors who graduated from high school in 2022 and did not redshirt. That exclusion violates Section 1 of the Sherman Act, 15 U.S.C. § 1, and the covenant of good faith and fair dealing implied in the NCAA's membership agreement and bylaws. Coordinate courts have granted preliminary or interlocutory injunctive relief on materially identical Class-of-2022 challenges to the NCAA's 5-for-5 legislation. See *Godfrey v. NCAA,* No. 26CV05617 (Super. Ct. Cobb Cty., Ga. Aug. 5, 2026); *Washington v. NCAA*, No. 26-0896-III (Chancery Ct. Davidson Cty., Tenn. July 31, 2026); *Wisne v. NCAA*, No. 1:26-cv-03063-CNS-KAS (D. Colo. July 31, 2026) (granted preliminary injunction, stayed pending appeal, Tenth Circuit, 8/21/2026 ), ECF No. 41 (D. Colo. Aug. 2, 2026) (clarification order confirming injunction against “any NCAA Bylaw”); *Borovicanin v. NCAA*, No. A2603352 (Ct. Common Pleas, Hamilton Cty., Ohio July 9, 2026); *Kromah v. NCAA*, No. ESX-C-000165-26 (Super. Ct. N.J., Essex Cty. July 30, 2026); *Wheeler v. NCAA*, No. 2026-2074-5 (414th Jud. Dist. Ct. McLennan Cty., Tex. July 29, 2026); *Oates v. NCAA*, No. CJ-26-325 (Dist. Ct. Payne Cty., Okla. July 29, 2026).

Additionally, the NCAA's decision to permit former professional basketball players to return to college without losing a season of competition for each professional season played violates the covenant of good faith and fair dealing and the West Virginia Consumer Credit and

Protection Act, W. Va. Code § 46A-6-101 *et seq*. Plaintiffs retain a genuine opportunity to compete for their respective NCAA Division I institutions during the 2026-27 academic year if they obtain immediate injunctive relief permitting them to sign scholarship and revenue-sharing agreements and third-party agreements compensating them for the use of their NIL.

## I. SUMMARY OF ARGUMENT

1. For decades, the NCAA has enforced a rule providing Division I athletes a five-year window to exhaust their seasons of competition (the "Five-Year Rule"). Under that rule, athletes were allowed four seasons of intercollegiate competition within a five-year window from first enrollment, with a redshirt year available in certain circumstances to preserve a season.

2. Beginning with athletes who graduated from high school in 2023 or later, the NCAA has adopted a five-seasons-in-five-years rule ("5-for-5"). Under that rule, athletes are entitled to compete in five seasons without needing to redshirt to preserve a season.

3. The NCAA has excluded the class of student-athletes who graduated from high school in 2022 (the "Class of 2022") from the 5-for-5 rule. Plaintiffs are members of the Class of 2022 who first enrolled in college in 2022, competed in four seasons within the following five years, and would be entitled to a fifth season under the new rule but for the NCAA's arbitrary and discriminatory refusal to extend it to them.

4. Compounding this disparate treatment, the NCAA has separately permitted former professional basketball players (including players who competed professionally for

multiple seasons) to return to NCAA competition without losing a season of competition for each professional season played. The NCAA thus extends five (and sometimes more) seasons of college competition to athletes who have played professionally, while denying a fifth season to Plaintiffs, who did not.

5. The NCAA's application of Bylaw 12.6 to Plaintiffs is an unreasonable restraint of trade in the sport-specific labor markets in NCAA Division I athletics, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

6. The NCAA's application of Bylaw 12.6 to Plaintiffs also breaches the covenant of good faith and fair dealing implied in the NCAA's membership agreement and bylaws, violates the West Virginia Consumer Credit and Protection Act, breaches promises on which Plaintiffs relied, and, for Marshall University Plaintiffs, violates W. Va. Code § 18B-22, and, for Ohio University Plaintiffs, violates Ohio Rev. Code § 3376.01 *et seq*.

7. Plaintiffs seek declaratory and injunctive relief enjoining the NCAA from applying Bylaw 12.6 to preclude Plaintiffs from competing during the 2026-27 season, and enjoining the NCAA from enforcing the Rule of Restitution under Bylaw 12.9.4.2 (formerly numbered 12.11.4.2) against Plaintiffs or against any institution or coach that permits Plaintiffs to compete in reliance on this Court's order.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Count I arises under Section 1 of the Sherman Act, 15 U.S.C. § 1. See *Robinson v. NCAA*, 172 F.4th 271, 289-90 (4th Cir. 2026) (concluding challenged NCAA eligibility

rules are “commercial and therefore subject to review under the Sherman Act”). The Court has supplemental jurisdiction over Counts II through VI under 28 U.S.C. § 1367(a) because those claims are so related to the Sherman Act claim that they form part of the same case or controversy.

9. This Court has personal jurisdiction over the NCAA. The NCAA regularly and systematically conducts business in West Virginia, including through its member institutions Marshall University and West Virginia University, sanctioning athletic competitions, distributing revenue, and enforcing bylaws against West Virginia athletes and institutions. *See Ohio v. NCAA*, 706 F. Supp. 3d 583 (N.D.W. Va. 2023) (exercising personal jurisdiction over the NCAA in West Virginia).

10. Venue is proper in the Southern District of West Virginia under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district, including the NCAA's application of the challenged bylaws to Marshall University athletes, and under § 1391(b)(3) because the NCAA is subject to personal jurisdiction in this district. Venue lies in the Huntington Division under this Court's local rules.

## III. THE PARTIES

11. Plaintiff Dewain Boogie Trotter is a football student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on his eligibility for the 2026-27 season.

12. Plaintiff Demarcus Lacey is a football student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on his eligibility for the 2026-27 season.

13. Plaintiff Bryce Blevins is a baseball student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on his eligibility for the 2026-27 season.

14. Plaintiff Bailey Fisher is a women's soccer student-athlete who graduated from high school in the Class of 2022 and first enrolled at Marshall University in the spring of 2022 as an early enrollee, and first competed in intercollegiate athletics during the 2022-23 season. Fisher has exhausted four seasons of intercollegiate competition without a redshirt.

15. Plaintiff Johanna Strom is a women's tennis student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on her eligibility for the 2026-27 season.

16. Plaintiff Peyton Ilderton is a women's basketball student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on her eligibility for the 2026-27 season.

17. Plaintiff Meredith Maier is a women's basketball student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on her eligibility for the 2026-27 season.

18. Plaintiff Blessing King is a women's basketball student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on her eligibility for the 2026-27 season.

19. Plaintiff Paige Simpson is a softball student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on her eligibility for the 2026-27 season.

20. Plaintiff Ryan Holmes is a men's soccer student-athlete who graduated from high school in 2022 and first enrolled at Marshall University in the spring of 2022 as an early enrollee, and first competed in intercollegiate athletics during the 2022-23 season. Holmes has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on his eligibility for the 2026-27 season. Marshall University Compliance is presently permitting Holmes to practice but has not cleared him for competition, pending clarification of his status under the NCAA's Class-of-2022 eligibility framework.

21. Plaintiff Hannah Wyler is a women's cross-country student-athlete who graduated from high school in 2022 and first enrolled at Marshall University in the spring of 2022 as an early enrollee, and first competed in intercollegiate athletics during the 2022-23 season. Wyler has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on her eligibility for the 2026-27 season. Marshall University Compliance is presently permitting Wyler to practice but has not cleared her for competition, pending clarification of her status under the NCAA's Class-of-2022 eligibility framework.

22. Plaintiff Ksenia Mamontova is a tennis student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot available at Marshall University contingent on a ruling on her eligibility for the 2026-27 season.

23. Plaintiff Allie Martin is a track and cross-country student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, resides in Kingwood, Preston County, West Virginia, and has a roster spot available at Ohio University contingent on a ruling on her eligibility for the 2026-27 season.

24. Plaintiff Leila Bouseddra is a track and cross-country student-athlete who graduated from high school in 2022, first enrolled in college in 2022, has exhausted four seasons of intercollegiate competition without a redshirt, and has a roster spot

available at Ohio University contingent on a ruling on her eligibility for the 2026-27 season.

25. Defendant National Collegiate Athletic Association is an unincorporated association with its principal place of business in Indianapolis, Indiana. The NCAA is composed of approximately 1,100 member colleges and universities across the United States, including Marshall University, West Virginia University, and Ohio University. The NCAA sets and enforces the rules of eligibility and competition for its member institutions in Division I, Division II, and Division III athletics.

## IV. FACTUAL ALLEGATIONS

26. For decades, the NCAA's eligibility framework has been anchored by the Five-Year Rule and the Seasons of Competition Rule. Under the Five-Year Rule, a Division I athlete has five years from the date of first enrollment as a full-time student to complete four seasons of intercollegiate competition. Under the Seasons of Competition Rule (Bylaw 12.6), an athlete's participation in any portion of a contest during a season counts as a full season of competition, subject only to narrow exceptions such as the "redshirt" exception for injury or nonparticipation in a season.

27. Under this framework, an athlete who first enrolled in college in the fall of 2022 (or in the spring of 2022 as an early enrollee) and competed in every subsequent season would have exhausted four seasons of competition by the end of the 2025-26 season, as each Plaintiff in this action has.

28. In response to the disruption caused by the COVID-19 pandemic, the NCAA extended an additional year of eligibility to student-athletes whose seasons were affected by the pandemic. Athletes who first enrolled in college between 2017 and 2020 were, in many cases, granted five or six seasons of intercollegiate competition. Plaintiffs, as members of the Class of 2022, competed alongside and against those athletes throughout their college careers.

29. During the 2025-26 legislative cycle, the NCAA adopted a rule providing that student-athletes graduating from high school in 2023 or later would be entitled to five seasons of competition within their five-year eligibility window, without any need to redshirt. This is the "5-for-5" rule.

30. In adopting the 5-for-5 rule, the NCAA elected to exclude the Class of 2022 from its benefits. The stated rationale, on information and belief, is that Class-of-2022 athletes had already exhausted four seasons under the prior rule and that extending the fifth season retroactively would be administratively burdensome.

31. The exclusion produces the following inequity: an athlete who graduated from high school in 2022 and competed in four consecutive seasons receives four seasons of eligibility. An athlete who graduated from high school in 2023 and competes in the same four seasons receives five. Two athletes who competed on the same field, in the same season, against one another, receive different eligibility outcomes solely on the basis of a one-year difference in high school graduation.

32. In addition to the 5-for-5 rule, the NCAA has separately permitted former professional basketball players to return to NCAA competition without losing a

season of competition for each professional season played. Individual former professional basketball players who competed for years in professional leagues have been permitted to enroll or re-enroll at NCAA member institutions and compete as Division I athletes, with their professional seasons not counted against their four seasons of NCAA eligibility.

33. On information and belief, this treatment has been extended to multiple former professional basketball players, including players whose professional careers spanned multiple seasons across the NBA, NBA G-League, and foreign professional leagues. *See Borovicanin v. NCAA*, No. A2603352 (Ct. Common Pleas, Hamilton Cty., Ohio) (identifying additional former professional basketball players granted return-to-college eligibility).

34. The NCAA thus extends five (and in some cases six or more) seasons of collegiate competition to former professional basketball players, while denying a fifth season to Plaintiffs, who have never competed professionally in their sports.

35. Plaintiffs Bailey Fisher, Ryan Holmes, and Hannah Wyler graduated from high school in the Class of 2022 and first enrolled at Marshall University in the spring of 2022, rather than the more traditional fall of 2022. Each of these Plaintiffs first competed in intercollegiate athletics during the 2022-23 season and has completed four seasons of intercollegiate competition without a redshirt through the 2025-26 season.

36. Plaintiffs Bailey Fisher, Ryan Holmes, and Hannah Wyler graduated from high school in the Class of 2022, first enrolled at Marshall University in the spring of

2022 as early enrollees, and first competed in intercollegiate athletics during the 2022–23 season. Each completed four seasons of intercollegiate competition without a redshirt through the 2025–26 season. These Plaintiffs are therefore similarly situated to Class-of-2022 student-athletes who first enrolled in the fall of 2022 and competed during the same four academic years. The district court in Wisne v. NCAA likewise defined the relevant class by reference to student-athletes who began collegiate play during the 2022–23 season, rather than by the semester in which they first enrolled (granted preliminary injunction, stayed pending appeal, Tenth Circuit, 8/21/2026). The NCAA has nonetheless not clarified whether it will treat Class-of-2022 high school graduates who enrolled at Marshall University in the spring of 2022 the same as Class-of-2022 athletes who first enrolled in the fall of 2022. These have not been cleared competition in the 2026-27 season, precisely because the NCAA has left that scenario undefined.

37. The failure to confirm the early-enrollee Plaintiffs' coverage produces additional irreparable harm: these Plaintiffs may lose their seasons of competition not because of any considered application of the eligibility rules, but because of the NCAA's failure to clarify the reach of its Class-of-2022 definition.

38. In *In re College Athlete NIL Litigation*, 2024 U.S. Dist. LEXIS 238686 (N.D. Cal. Oct. 7, 2024), the Northern District of California granted preliminary approval to a settlement (the "*House Settlement*") permitting NCAA member institutions to pay their student-athletes directly a percentage of institutional revenue derived from media rights, ticket sales, and sponsorships. The court subsequently granted final approval to the settlement, *In re Coll. Athlete NIL Litig.*, 803 F. Supp. 3d 959, 975-

76 (N.D. Cal. 2025), and *overruled objections*, 2025 U.S. Dist. LEXIS 263401 (N.D. Cal. Nov. 13, 2025). See *Robinson v. NCAA*, 172 F.4th 271, 279 n.1 (4th Cir. 2026) (recognizing the *House Settlement* as the basis for revenue-sharing by universities with student-athletes).

39. Under the *House* Settlement and NCAA rules implementing it, Division I student-athletes are entitled to receive revenue-sharing payments from their institutions and to enter into third-party NIL agreements. The commercial value of an athlete's NIL is directly tied to the athlete's status as an eligible Division I competitor.

40. Plaintiffs, if permitted to compete during the 2026-27 season, would be entitled to sign revenue-sharing agreements with their respective institutions and to enter into third-party NIL agreements. The NCAA's denial of their eligibility for that season strips them of that commercial opportunity in its entirety.

41. The *House* Settlement also introduced a roster-designation methodology under which certain student-athletes may be designated as "Designated Student Athletes" whose participation does not count against the roster limits imposed on NCAA member institutions. Granting Plaintiffs relief in this action need not disadvantage any other athlete, because Plaintiffs may be designated under that methodology.

42. NCAA Bylaw 12.9.4.2 (formerly numbered 12.11.4.2), commonly known as the "Rule of Restitution," authorizes the NCAA to impose penalties on member institutions and coaches who permit an ineligible athlete to compete in reliance on a court order that is later modified, dissolved, or reversed. The rule serves to chill compliance with judicial orders granting eligibility relief.

43. In *Robinson v. NCAA*, 803 F. Supp. 3d 481 (N.D.W. Va. 2025), *vacated on other grounds*, 172 F.4th 271 (4th Cir. 2026), the district court in the Northern District of West Virginia enjoined the NCAA's application of the Restitution Rule to the named plaintiffs and to West Virginia University for complying with, and relying on, the court's order. The NCAA did not challenge that portion of the injunction on appeal, and the Fourth Circuit held that "any such argument is waived, and the district court's injunction of the Restitution Rule remains in place." *Robinson v. NCAA*, 172 F.4th 271, 283 n.6 (4th Cir. 2026).

44. At the time of first enrollment and throughout their college careers, Plaintiffs relied on the NCAA's representations that its eligibility rules would be applied consistently and fairly, that competition would occur on a level playing field, and that any material changes to the eligibility framework would apply to all similarly situated athletes.

45. Plaintiffs made educational, athletic, financial, and personal decisions in reliance on those representations, including but not limited to decisions about which institution to attend, whether to redshirt, whether to transfer, and whether to pursue professional opportunities. Had Plaintiffs known that the NCAA would exclude them from a rule extending five seasons of eligibility to their immediate successors, they would have made different decisions, including in many cases the decision to redshirt in an earlier season to preserve a fifth year.

## V. COUNTS

### *COUNT I: Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (All Plaintiffs)*

46. Plaintiffs incorporate paragraphs 1 through 45 by reference.

47. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1.

48. The NCAA is an unincorporated association of member institutions that, through its constitution and bylaws, imposes horizontal agreements on its members restraining the terms on which its members may compete for the services of college athletes. The Supreme Court has recorded the NCAA's own concession that its members “collectively enjoy monopsony power in the market for student-athlete services.” *NCAA v. Alston*, 594 U.S. 69, 90 (2021).

49. The Fourth Circuit has held that NCAA eligibility rules are commercial in nature and subject to review under the Sherman Act. *Robinson v. NCAA*, 172 F.4th 271, 289-90 (4th Cir. 2026).

50. The relevant antitrust market for each Plaintiff is the sport-specific Division I labor market for the sport in which that Plaintiff competes or seeks to compete. Those markets include, without limitation: Division I football (Trotter, Lacey); Division I baseball (Blevins); Division I women's soccer (Fisher); Division I women's tennis (Strom, Mamontova); Division I women's basketball (Ilderton, Maier, King); Division I softball (Simpson); Division I men's soccer (Holmes); Division I women's cross-country (Wyler); and Division I women's track and cross-country (Martin, Bouseddra). See *Ohio v. NCAA*, 706 F. Supp. 3d 583, 592 (N.D.W. Va.

2023) (recognizing sport-specific labor markets within NCAA Division I as relevant antitrust markets).

51. Each of these markets is national in geographic scope. The NCAA and its member institutions "maintain exclusive market power, with the sole ability to dictate rules and regulations for participation in Division I athletics." *Id.* Student-athletes seeking to compete at the highest level of collegiate athletics have no reasonably interchangeable alternative to NCAA Division I competition.

52. The NCAA's application of Bylaw 12.6 to Plaintiffs is an unreasonable restraint of trade in these markets under the rule of reason. The restraint produces the following anticompetitive effects: it reduces the total number of Division I competition-eligible athletes in the affected sport-specific markets in the 2026-27 season; it depresses the compensation Plaintiffs can command in the market for revenue-sharing and NIL agreements to zero, because ineligible athletes cannot participate; and it eliminates competition among institutions for Plaintiffs' services.

53. The NCAA's proffered procompetitive justifications for the exclusion (administrative burden and preservation of the four-seasons-in-five-years framework) are pretextual and, in any event, less restrictive alternatives are available, including permitting Class-of-2022 athletes to compete in 2026-27 and designating them under the *House* Settlement's Designated Student Athlete methodology so their participation does not affect roster limits.

54. Plaintiffs have suffered and continue to suffer antitrust injury as a direct and proximate result of the NCAA's Sherman Act violation, including the loss of a

season of competitive opportunity, the loss of associated NIL and revenue-sharing income, and reputational injury in the market for athletic services.

***COUNT II: Breach of the Implied Covenant of Good Faith and Fair Dealing (All Plaintiffs)***

55. Plaintiffs incorporate paragraphs 1 through 54 by reference.

56. The NCAA's Constitution and Bylaws constitute a contract between the NCAA and its member institutions. Plaintiffs are intended third-party beneficiaries of that contract, entitled to enforce it under W. Va. Code § 55-8-12.

57. West Virginia law implies in every contract a covenant of good faith and fair dealing. *Barn-Chestnut, Inc. v. CFM Dev. Corp.*, 193 W. Va. 565, 571-72 (1995) (recognizing implied covenant of good faith in the performance and enforcement of a contract governed by the Uniform Commercial Code); see also *The Rainmaker Grp. Ventures v. Bellack*, 354 Ga. App. 847, 851, 841 S.E.2d 738 (2020) (recognizing that the implied covenant of good faith and fair dealing prohibits "arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain"). Plaintiffs' claim is distinct from *Hart v. NCAA*, 209 W. Va. 543 (2001), which involved a single student-athlete's challenge to the discretionary denial of a waiver from an emergency NCAA weight-class regulation. Here, by contrast, the NCAA has selectively extended a fifth season of competition to some Division I athletes while withholding it from others in the immediately preceding class, and the challenged conduct is the discriminatory operation of the eligibility framework itself, not the denial of an individualized waiver.

58. The NCAA's Constitution and Bylaws contain express commitments to fairness in the administration of intercollegiate athletics. Article 1-C of the NCAA Constitution requires all individuals associated with intercollegiate athletics programs to adhere to such fundamental values as respect, fairness, civility, honesty, responsibility, academic integrity, and ethical conduct. Article 1-D further requires each member institution to ensure that coaches and administrators exhibit fairness, openness, and honesty in their relationship with student-athletes. These provisions form part of the contractual framework of which Plaintiffs are intended third-party beneficiaries and inform the NCAA's obligation to exercise its rights and discretion under the Bylaws in good faith.

59. The NCAA Bylaws further vest the NCAA with broad discretionary authority to grant additional seasons of competition and other eligibility relief. NCAA Bylaw 12.6.1.7 authorizes the Committee on Student-Athlete Reinstatement, by a two-thirds majority vote, to approve waivers of the five-year rule as it deems appropriate. NCAA Bylaw 12.6.6 authorizes that same Committee to grant an additional season of competition for extenuating circumstances, and Bylaw 12.6.1.7.1.3 reserves to the Committee the right to review requests for circumstances of extraordinary or extreme hardship. The NCAA's refusal to exercise any of that authority to remedy the Class-of-2022 inequity, while extending comparable or greater eligibility relief to other categories of athletes, is further evidence of arbitrary and bad-faith administration of the contractual eligibility framework.

60. The NCAA breached the implied covenant of good faith and fair dealing by, among other conduct: (a) applying its 5-for-5 legislation to grant five seasons of competition to athletes who graduated from high school in 2023 or later while arbitrarily excluding Plaintiffs, who graduated only one year earlier; (b) permitting former professional basketball players to return to NCAA competition without losing a season of competition for each professional season played, while denying a fifth season to Plaintiffs who never competed professionally; (c) counting participation of as little as a few minutes in a single game as an entire season of competition; and (d) failing to clarify the reach of its Class-of-2022 definition as applied to early-enrollee Plaintiffs, resulting in Marshall University Compliance's inability to clear those Plaintiffs for competition despite their status as Class-of-2022 high school graduates whose first season of intercollegiate competition was 2022-23.

61. As a direct and proximate result of the NCAA's breach, Plaintiffs have been denied the fruits of their bargain with the NCAA and its member institutions and have suffered the injuries described above.

***COUNT III: Violation of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101 et seq. (All Plaintiffs)***

62. Plaintiffs incorporate paragraphs 1 through 61 by reference.

63. The West Virginia Consumer Credit and Protection Act declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

64. Plaintiffs are "consumers" who acquired educational services from NCAA member institutions in reliance on the NCAA's representations concerning the terms of intercollegiate eligibility and competition. The NCAA is engaged in trade or commerce through its rulemaking, sanctioning, licensing, and revenue-distribution activities.

65. The NCAA has for decades represented to prospective student-athletes and their families that collegiate athletics is reserved for amateurs and that a former professional athlete cannot return to collegiate competition to play the same sport professionally. The NCAA has now reversed that representation as to former professional basketball players, while continuing to enforce the four-seasons-in-five-years rule against Plaintiffs. That selective treatment is precisely the "unfair" conduct the WVCCPA prohibits.

66. As a direct and proximate result of the NCAA's violation of the WVCCPA, Plaintiffs have suffered the injuries described above.

***COUNT IV: Promissory Estoppel (All Plaintiffs, in the Alternative)***

67. Plaintiffs incorporate paragraphs 1 through 66 by reference.

68. The NCAA made clear and definite promises to Plaintiffs, both directly and through its member institutions, that its eligibility rules would be applied consistently and fairly and that all Division I athletes would be afforded equal opportunity to compete.

69. Plaintiffs reasonably and foreseeably relied on those promises in making decisions about enrollment, redshirting, transfer, and pursuit of professional opportunities.

70. Plaintiffs' reliance was to their detriment. Injustice can be avoided only by enforcement of the NCAA's promises.

***COUNT V: Violation of the West Virginia Name, Image, and Likeness Statute, W. Va. Code § 18B-22 (Marshall University Plaintiffs)***

71. Plaintiffs Trotter, Lacey, Blevins, Fisher, Strom, Ilderton, Maier, King, Simpson, Holmes, Wyler, and Mamontova (the "Marshall Plaintiffs") incorporate paragraphs 1 through 70 by reference.

72. W. Va. Code § 18B-22-3 prohibits an institution, athletic association, athletic conference, or other organization with authority over intercollegiate athletics from opening an investigation, penalizing, suspending, taking other adverse action, or declaring a student-athlete ineligible from intercollegiate athletic competition as a result of the student-athlete's engaging in activities authorized by the article, which include the use of the student-athlete's name, image, or likeness for compensation.

73. Marshall University is an institution within the meaning of W. Va. Code § 18B-1-2. The NCAA is an athletic association within the meaning of W. Va. Code § 18B-22-3.

74. By denying the Marshall Plaintiffs eligibility to compete during the 2026-27 season, the NCAA prevents the Marshall Plaintiffs from earning compensation

from the use of their NIL that is tied to their status as eligible Division I athletes at a West Virginia postsecondary institution.

75. The Marshall Plaintiffs are entitled to injunctive relief under W. Va. Code § 18B-22-5 restraining the NCAA from applying Bylaw 12.6 to deny them eligibility during the 2026-27 season.

***COUNT VI: Violation of the Ohio Name, Image, and Likeness Statute, Ohio Rev. Code § 3376.01 et seq. (Ohio University Plaintiffs)***

76. Plaintiffs Martin and Bouseddra (the "Ohio University Plaintiffs") incorporate paragraphs 1 through 75 by reference.

77. Ohio Rev. Code § 3376.03 provides that an athletic association, conference, or other group or organization with authority over intercollegiate athletics shall not prevent a student-athlete of a state institution of higher education or private college from fully participating in intercollegiate athletics because the student-athlete earns compensation for the use of the student-athlete's name, image, or likeness.

78. Ohio University is a state institution of higher education within the meaning of Ohio Rev. Code § 3376.01(D). The NCAA is an athletic association, conference, or other group or organization with authority over intercollegiate athletics within the meaning of Ohio Rev. Code § 3376.03.

79. By denying the Ohio University Plaintiffs eligibility to compete during the 2026-27 season, the NCAA prevents the Ohio University Plaintiffs from earning

compensation from the use of their NIL that is tied to their status as eligible Division I athletes at an Ohio institution.

80. The Ohio University Plaintiffs are entitled to injunctive relief under Ohio Rev. Code § 3376.12(A) restraining the NCAA from applying Bylaw 12.6 to deny them eligibility during the 2026-27 season.

**COUNT VII. — Tortious Interference with Contractual and Business Relationships**

81. Plaintiffs Dewain Boogie Trotter, Demarcus Lacey, Bryce Blevins, Bailey Fisher, Johanna Strom, Peyton Ilderton, Meredith Maier, Blessing King, Paige Simpson, Ryan Holmes, Hannah Wyler, Ksenia Mamontova, Allie Martin, and Leila Bouseddra incorporate paragraphs 1 through 80 by reference.

82. Plaintiffs have existing and prospective contractual and business relationships with Marshall University and other NCAA institutions, including relationships concerning roster opportunities, athletic aid, revenue-sharing, NIL opportunities, training, and competition.

83. The NCAA knows of these relationships and, through enforcement of the challenged eligibility rules, intentionally and improperly interferes with Plaintiffs' ability to enter into, continue, and perform those relationships.

84. The NCAA's conduct has caused and threatens to cause Plaintiffs injury, including loss of roster opportunities, athletic aid, revenue-sharing, NIL opportunities, training, and competition.

## A. VIII. REQUEST FOR INJUNCTIVE RELIEF

85. Plaintiffs incorporate paragraphs 1 through 84 by reference.

86. Plaintiffs are entitled to a temporary restraining order and preliminary and permanent injunctions restraining the NCAA from applying Bylaw 12.6 to preclude them from competing during the 2026-27 season, restraining the NCAA from enforcing the Rule of Restitution (Bylaw 12.9.4.2) against Plaintiffs or against institutions and coaches that permit Plaintiffs to compete in reliance on this Court's orders, and granting the additional relief specified in the Prayer for Relief below.

87. Plaintiffs will suffer irreparable harm absent injunctive relief. "[C]ollege students suffer irreparable harm when they are denied the opportunity to play sports." *Ohio v. NCAA*, 706 F. Supp. 3d 583, 597 (N.D.W. Va. 2023) (quoting *S.A. v. Sioux Falls Sch. Dist. 49-5*, 2023 U.S. Dist. LEXIS 185464, at *9 (D.S.D. Oct. 13, 2023)). The eligibility Plaintiffs seek to preserve is not replaceable by money damages: a season of Division I competition, once lost, cannot be recovered, and the NIL and revenue-sharing opportunities tied to that eligibility disappear with it. See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (setting forth preliminary-injunction standard); see also *Wisne v. NCAA*, No. 1:26-cv-03063-CNS-KAS, ECF No. 41, at 6 (D. Colo. Aug. 2, 2026) (clarifying that the preliminary injunction "enjoin[s] the NCAA from prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule (as defined in the preliminary injunction order) or any NCAA Bylaw").

88. The balance of equities strongly favors Plaintiffs. Their eligibility window is measured in months. The NCAA, by contrast, has already extended a fifth season

of competition to every athlete who graduates from high school in 2023 or later, and it routinely permits fifth-year competition through redshirts and individual waivers. Because the NCAA already administers that same fifth-season eligibility for the immediately succeeding cohort, extending it to the Class of 2022 requires no additional administrative machinery.

89. The public interest favors injunctive relief. The NCAA should not be permitted to chill the exercise of judicial remedies by threatening penalties against schools and coaches who comply with court orders.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

**A.** Issue a temporary restraining order and, following hearing, a preliminary injunction, and, following trial on the merits, a permanent injunction, restraining the NCAA from:

(1) enforcing NCAA Bylaw 12.6, or any other Bylaw, to preclude Plaintiffs from playing NCAA Division I athletics in the 2026-27 season on the basis that they have already competed in four seasons of competition;

(2) preventing any Plaintiff from playing for any NCAA member institution on the basis that the Plaintiff did not enter the NCAA Transfer Portal; requiring the NCAA, immediately upon entry of the Court's order, to permit any Plaintiff who reasonably failed to enter the NCAA Transfer Portal while treated as having exhausted his or her NCAA eligibility to enter and utilize the Transfer Portal for a reasonable period established by the Court; enjoining the NCAA from enforcing

any transfer-portal or related administrative deadline against such Plaintiff to the extent the Plaintiff reasonably failed to satisfy such deadline while treated as having exhausted his or her NCAA eligibility; and enjoining the NCAA from penalizing, sanctioning, or otherwise taking adverse action against any Plaintiff, NCAA member institution, conference, coach, or third party for permitting or facilitating a transfer pursuant to such relief;

(3) preventing any Plaintiff from playing for any NCAA member institution on the basis that, during a period in which the Plaintiff reasonably believed his or her NCAA eligibility had expired, the Plaintiff signed a professional contract or otherwise pursued opportunities to compete professionally, so long as any professional playing contract is terminated and any compensation received under such contract, other than reasonable and necessary expenses, is returned;

(4) enforcing Bylaw 12.9.4.2 (the Rule of Restitution), any "ghost transfer" rule, or otherwise penalizing, sanctioning, threatening, or taking adverse action against any Plaintiff, NCAA member institution, coach, or third party for permitting or facilitating the recruiting, contacting, signing, transferring, enrolling, rostering, provision of athletic aid or revenue-sharing payments to, NIL activity of, practice by, or competition by any Plaintiff during the 2026–27 season in reliance on this Court's orders;

**B.** Declare that Plaintiffs Bailey Fisher, Ryan Holmes, and Hannah Wyler, as Class-of-2022 high school graduates whose first season of intercollegiate competition was 2022-23, are within the class of student-athletes entitled to the relief set forth in Paragraph A above on

the same terms as Plaintiffs who first enrolled in the fall of 2022, and may not be withheld from practice or competition on the basis of their spring 2022 enrollment date rather than a fall 2022 enrollment date;

**C.** Declare that the NCAA's application of Bylaw 12.6 to Plaintiffs violates Section 1 of the Sherman Act, the covenant of good faith and fair dealing implied in the NCAA's Constitution and Bylaws, the West Virginia Consumer Credit and Protection Act, W. Va. Code § 18B-22 (as to the Marshall Plaintiffs), and Ohio Rev. Code § 3376.01 *et seq*. (as to the Ohio University Plaintiffs);

**D.** Award Plaintiffs reasonable attorneys' fees and costs to the extent authorized by law;

**E.** Set trial on the merits at the earliest available date; and

**F.** Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this ____ day of ____________, 2026.

Respectfully submitted,

/s/ Stephen P. New
Stephen P. New, Esq. (WVSB # 7756)
Emilee B. Wooldridge (WVSB #14310)
STEPHEN NEW & ASSOCIATES
430 Harper Park Drive
P.O. Box 5516
Beckley, WV 25801
Telephone: (304) 250-6017
Facsimile: (304) 250-6012
*steve@newlawoffice.com*
*emilee@newlawoffice.com*
*Counsel for Plaintiffs*

/s/ Dusty Gwinn
Dusty Gwinn (WVSB #9849)
Akers Gwinn LLC
3814 Virginia Avenue

Charleston, WV 25304
Telephone: (304) 924-1110
Dusty@akersgwinn.com
*Counsel for Plaintiffs*